# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### TRENTON DIVISION

| | |
|---|---|
| **ASTRAZENECA AB, et al.,** | ) Docket No. 3:15-cv-03375-FLW-DEA |
| | ) |
| **Plaintiffs,** | ) Courtroom No. 6W |
| | ) Clarkson S. Fisher Building |
| **versus** | ) & U.S. Courthouse |
| | ) 402 East State Street |
| **TORRENT PHARMA INC. et al.,** | ) Trenton, New Jersey 08608 |
| | ) |
| **Defendants.** | ) July 6, 2016 |
| | ) 10:53 a.m. |

```
             TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
              BEFORE HONORABLE DOUGLAS E. ARPERT
                 UNITED STATES MAGISTRATE JUDGE


For the Plaintiffs:      McCarter & English LLP
                         By:  JOHN E. FLAHERTY, ESQ.
                              AYA CIESLAK-TOCHIGI, ESQ.
                         Four Gateway Center
                         100 Mulberry Street
                         Newark, New Jersey 07102

                         Covington Burling, LLP
                         By:  MICHAEL N. KENNEDY, ESQ.
                         One City Center
                         850 Tenth Street, NW
                         Washington, DC 20001-4956


ESR/Courtroom Deputy:    Charmaine Ellington
```

**TRANSCRIPTION SERVICE:**      **TRANSCRIPTS PLUS, INC.**
                               **435 Riverview Circle**
                               **New Hope, Pennsylvania 18938**
                               **Telephone: 215-862-1115**
                               **Facsimile: 215-862-6639**
                               **e-mail CourtTranscripts@aol.com**

```
 Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.
```

```
APPEARANCES:
(Continued)

For the Defendants:      NANCY ZHANG, ESQ.

                         HaynesBoone
                         By:  JOHN W. BATEMAN, ESQ.
                         800 17th Street, NW
                         Suite 500
                         Washington, DC 20006

                         Wiley Rein LLP
                         By:  RACHEL HUNNICUTT, ESQ.
                         1776 K Street NW
                         Washington, DC 20006

For Hetero USA, Inc.:    Hill Wallack, LLP
                         By:  CHRISTINA L. SAVERIANO, ESQ.
                         21 Roszel Road
                         Princeton, New Jersey 08543

For Citron Pharma        Rivkin Radler LLP
LLC:                     By:  NANCY ANN DEL PIZZO, ESQ.
                         21 Main Street, Suite 158
                         Court Plaza South, West Wing
                         Hackensack, New Jersey 07601

                         Axinn Veltrop & Varkrider LLP
                         By:  JOSH REISBERG, ESQ.
                         114 W. 47TH Street, 22nd Floor
                         New York, New York 10036

For Torrent:             Brown Moskowitz & Kallen, PC
                         By:  REBEKAH R. CONROY, ESQ.
                         180 River Road
                         Summit, New Jersey 07901

                         Robins Kaplan LLP
                         By:  JEFFREY HOVDEN, ESQ.
                         601 Lexington Avenue
                         Suite 3400
                         New York, NY 10022

For Breckenridge         Fleming Ruvoldt PLLC
Pharmaceutical, Inc.:    By:  ROBERT JOSEPH FETTWEIS, ESQ.
                         250 Moonachie Road
                         Suite 501
                         Moonachie, New Jersey 07074
```

```
APPEARANCES:
(Continued)


For Mylan                  Saiber LLC
Pharmaceuticals Inc.:      By:  ARNOLD B. CALMANN, ESQ.
                           One Gateway Center, 10th Floor
                           Newark, New Jersey 07102-5311

                           Wilson Sonsini Goodrich & Rosati
                           By:  TUNG-ON KONG, ESQ.
                           One Market Plaza
                           Spear Tower, Suite 3300
                           San Francisco, California 94105

For Micro Labs             Carella Byrne Cecchi Olstein
USA and Apotex:            Brody & Agnello, PC
                           By:  MELISSA E. FLAX, ESQ.
                           5 Becker Farm Road
                           Roseland, New Jersey 07068

                           Taft Stettinius & Hollister LLP
                           By:  ANDREW N. ALUL, ESQ.
                                BRIAN P. MURRAY, ESQ.
                           111 East Wacker
                           Suite 2800
                           Chicago, Illinois 60601

For Prinston               Fox Rothschild, LLP, PC
Pharmaceutical, Inc.:      By:  KAREN A. CONFOY, ESQ.
                           997 Lenox Drive, Building 3
                           Lawrenceville, New Jersey 08648

For Zydus                  Locke Lord LLP
Pharmaceuticals (USA),     By:  ELISSA J. GLASBAND, ESQ.
Inc.:                      44 Whippany Road
                           Morristown, New Jersey 07960

For Strides Pharma,        Budd Larner, PC
Inc.                       By:  MICHAEL H. IMBACUAN, ESQ.
                           150 John F. Kennedy Parkway
                           CN 1000
                           Short Hills, New Jersey 07079
```

1       <u>TRENTON, NEW JERSEY   JULY 6, 2016,  10:53 A.M.</u>

2       THE COURT:   This is the consolidated Roflumilast

3   cases.   It's consolidated with Judge Wolfson under Civil Action

4   Number 15-3375.   I apologize for the confusion.

5       Counsel, I have all of your appearances noted, and

6   I'm not going to take the time to have you restate them on the

7   record.   But I would appreciate if you'd identify yourselves as

8   you speak.

9       My thought, in terms of an agenda for this morning,

10  was to start with plaintiffs' counsel and see what the current

11  status is, what open items we have that need to be addressed,

12  and then ask defense counsel to add any additional items of

13  interest or concern to the agenda, and then work our way

14  through them.

15      So, Mr. Flaherty, good morning.   I'll start with you

16  on behalf of plaintiffs to see an overview of where you see the

17  case -- cases, and the items that you think need to be

18  addressed today, please.

19      MR. FLAHERTY:   Good morning, Your Honor.   Michael

20  Kennedy from Covington Burling is on the line, and he'll be

21  able to discuss those issues today.

22      THE COURT:   Thank you.   Good morning, Mr. Kennedy.

23      MR. KENNEDY:   Good morning, Your Honor.   This is Mike

24  Kennedy with Covington on behalf of the plaintiffs.

25      We only have one issue for today, aside from which we

1  have a claim construction hearing next week, and from

2  plaintiffs' perspective, fact discovery in proceeding.

3       Plaintiffs do have a pending motion to compel that we

4  -- against four of the defendants that we filed a letter June

5  27th.  And three of the four defendants filed an opposition

6  letter on July 1st.  And this has to do with the motion to

7  compel production of certain active ingredient samples for the

8  defendants in question that have expired.

9       THE COURT:  Right.  I'm --

10      MR. KENNEDY:  And plaintiffs have moved to compel

11  production.  I'm happy to address that motion, if Your Honor

12  would like.

13      THE COURT:  Let's come back to it in one minute.  I

14  have Mr. Flaherty's letter of June 27th, which appears on the

15  docket as Entry Number 96.  And I also have Ms. Flax's letter

16  of July 1, which appears as Entry Number 99 on the docket.  And

17  I am prepared to discuss the issues raised in that

18  correspondence with you this morning.

19       So in sum then, the report from the plaintiffs is

20  that things are progressing according to schedule, including a

21  claim construction hearing set for next week with Judge

22  Wolfson, and you'd like me to address the informal motion that

23  we just discussed.

24       Is there anything else you think out to be on the

25  agenda for the call today, Mr. Kennedy?

1              MR. KENNEDY:  No, Your Honor.

2              THE COURT:  Okay; thank you.

3         From the -- from the defense perspective, is there

4    anything in addition to what Mr. Kennedy has laid out that

5    anyone thinks needs to be addressed on this call today?

6                   (No audible response heard)

7              THE COURT:  Okay.

8              MR. HOVDEN:  No, Your Honor, not from --

9              THE COURT:  Who was speaking, please?

10             MR. HOVDEN:  Jeff Hovden for Torrent.  And Torrent

11   has no other issues.

12             THE COURT:  Okay; thank you.

13        Let me as this question:  In reviewing the docket in

14   anticipation of the call, I see a letter dated May 19,

15   submitted by Mr. Calmann as an unopposed application for leave

16   to amend Mylan's non-infringement and invalidity contentions,

17   and a proposed order attached.

18             Mr. Calmann, do you know whether that order was

19   entered?

20                  (No audible response heard)

21             THE COURT:  Perhaps we've lost Mr. Calmann.

22             MR. KONG:  Your Honor, this is T.O. Kong for Mylan --

23   national counsel for Mylan, if I may address that.  I do not

24   believe the Court has taken action on that motion.  And I think

25   that (indiscernible 10:58:10) submitted a similar letter, that

1   letter also is pending before the Court.

2               THE COURT:  Okay.  I appreciate that, and I assume

3   there is no objection then to my entering that order submitted

4   by Mylan today, correct?

5               UNIDENTIFIED ATTORNEY:  No objection --

6               UNIDENTIFIED ATTORNEY:  That's correct, Your Honor.

7               THE COURT:  Okay.

8               MR. ALUL:  Your Honor, this is Andy Alul for

9   defendants Apotex and Micro Labs.

10              We also have a similar letter on file that is an

11  unopposed motion for leave to serve supplemental invalidity

12  contentions, as well.  And we would hope -- we would request

13  that the Court consider that letter and proposed order, as

14  well.

15              THE COURT:  I have that in front of me, as well;

16  thank you.  That came in -- together with correspondence from

17  Ms. Flax dated June 9.  And I will take care of entering that

18  order after the call today, as well.  Okay.

19              Before I -- we move on --

20              MR. CALMANN:  Your Honor, this is --

21              THE COURT:  Go ahead.

22              MR. CALMANN:  Your Honor?

23              THE COURT:  Yes?

24              MR. CALMANN:  Your Honor, this is Arnie Calmann.  I'm

25  sorry to interrupt, I just wanted to apologize.  I heard you

1  mention my name just as I got disconnected, there's a lot of

2  electrical (indiscernible 10:59:25) me at the moment.  I

3  apologize.

4          THE COURT:  No -- no trouble.  Your colleague

5  responded to my question, and we've resolved the -- we resolved

6  the issue.  It was about an unsigned order that you submitted

7  back in May, and just a little bit of housekeeping.  So we've

8  taken care of it; thank you.

9          MR. CALMANN:  Thank you, Your Honor.

10          THE COURT:  All right.  Are there any other -- before

11  we move on to the substantive issue of plaintiffs' application,

12  are there any other housekeeping items that should be

13  addressed?  Are there any -- any other party that has an open

14  order or request to the Court that has not been addressed to

15  date?

16              (No audible response heard)

17          THE COURT:  Okay.  Are we currently operating under a

18  current case management order?  In other words, are the dates

19  that you all are operating under from a prior order operative?

20  Are they still governing what's going on?  In other words, do

21  we -- is our scheduling order adequate as we sit here?

22          MR. KENNEDY:  Your Honor, this is Mike Kennedy from

23  Covington.

24          From plaintiffs' perspective, the scheduling order is

25  Docket Entry 37, appears to be operative except we cut the

1   claim construction hearing down to one day on the 12th, that's

2   actually been taken care of.

3           THE COURT:  Does anybody think differently?  In other

4   words, everybody is content with the current case management

5   order as it stands?

6                   (No audible response heard)

7           THE COURT:  Okay; thank you for that.  All right.

8           So what I'm left with, it seems, is an informal

9   application brought on behalf of the plaintiffs.  It's a

10  dispute concerning a refusal by some defendants to produce

11  samples of -- at least it's characterized by plaintiff, a

12  refusal by some defendants to produce samples of the active

13  ingredient in their respective ANDA products.  The defendants -

14  -, Apotex, Mylan, Prinston, and Torrent -- apparently have

15  withheld production of these samples on the grounds or on the

16  basis that the samples have expired.  And that issue is the

17  subject of the two submissions that I received.

18          The defendants argue that they have produced samples

19  in their final formulate -- of their final formulated products,

20  and because the samples that the plaintiffs seek are expired

21  and will not be used to formulate the defendants' ANDA

22  products, that they are not representative of the products that

23  the defendants will produce and market, and as a result, there

24  is no relevance to those samples.

25          Have I -- Mr. Kennedy, have I captured the essence of

1   the dispute?  Anything you want to add?

2           MR. KENNEDY:  Your Honor, there are a few things I'd

3   like to add, but I think that is the essence of what I

4   understand to be plaintiffs' position.

5           THE COURT:  Okay.  Go ahead.

6           MR. KENNEDY:  I'm sorry; defendants' position.

7           THE COURT:  Yeah, go ahead, I'll -- I'll hear you.

8           MR. KENNEDY:  The point I'd -- the point I'd make

9   here is that defendants -- first of all, they've never -- the

10  defendants opposing the motion have never contended that

11  producing the expired API would be an undue burden.  And they

12  also don't have unexpired API samples.  All they have from the

13  API perspective is expired.  And their argument for relevance

14  is based on essentially a scientific dispute that is going to

15  be hotly disputed between the parties when we get to expert

16  discovery.  And I don't think it would be appropriate for the

17  Court at this point to essentially make a ruling on that

18  scientific issue by saying that the expired samples are

19  irrelevant.

20          THE COURT:  Well, let's talk about --

21          MR. KENNEDY:  I think (indiscernible - multiple

22  speakers 11:04:02).

23          THE COURT:  Let's talk -- excuse me.  Let's talk

24  about their relevance for a minute.  They -- is it -- is it, in

25  fact, true that the resisting defendants here have each

1  produced samples of their final formulated products?

2        MR. KENNEDY:  They've agreed to; I'm not sure they've

3  all produced them yet.  I think they're in -- some are in the

4  process of.  But, yes, we expect to get finished samples from

5  everybody.

6        THE COURT:  Okay.  So if those are the products that

7  will ultimately be the subject of the dispute, what is the

8  relevance of the expired products?  I know there is a

9  scientific argument about the degradation of the product, and I

10 may not -- I may not have the right terminology here, but I

11 think -- I think everybody agrees that over time, this product

12 -- this product does degrade.

13        So why are we -- why are we focused on products that

14 we know are expired?  And why aren't we focused on the products

15 that are in the final formulated form?

16        MR. KENNEDY:  Well, let me answer that in two parts,

17 Your Honor:

18        First of all, plaintiffs don't agree that 4-Hydroxy

19 Impurity is a degradation product.  And I'm happy to address

20 the document that the defendants attach to their motion, but

21 that -- but that's the hotly disputed issue I was referring to.

22        Defendants, as I understand it, contend that the 4-

23 Hydroxy Impurity within the claim is a degradation product of

24 Roflumilast.  Plaintiffs disagree with that, at least under

25 those conditions.

1        And, in fact, the data in Exhibit A to their

2   opposition shows that several of the tests -- the stability

3   tests that are set forth in that 2009 document don't show any

4   formulation of the 4-Hydroxy Impurity.  The only test that

5   appeared to show that after six months was under Artificial

6   Accelerated (indiscernible 11:06:20).

7        So I think this gets back to my point that defendants

8   are asking Your Honor to make a ruling on a disputed issue that

9   really is going to be addressed by experts in the trial.  And

10  they've provided no context through the document for their --

11  for their argument on the degradation argument.  They've done

12  nothing to connect up this 2009 Takeda document to their own

13  products.

14       So I just wanted to clarify that there is no

15  agreement about whether this was actually a degradation

16  product.

17       As for the relevance, you know, we'll have expert --

18  expert discovery isn't for several months.  Plaintiffs are

19  considering running any number of tests to confirm that

20  defendants infringe these three patents that require the

21  presence of the small amount of 4-Hydroxy Impurity, and we --

22  the API samples are not cumulative necessarily for the finished

23  dosage form samples.  You know, there are different tests that

24  one could run on just an API versus the finished dosage form.

25  And that, you know, again, that's really for experts to sort

1    out.

2          But the case law -- including the case law defendants

3    cite -- makes clear that in making the ultimate determination

4    of infringement based on the product (indiscernible 11:07:45),

5    courts can consider a wide variety of evidence, including

6    samples, including test data, extrinsic to the ANDA itself.

7    You know, one example that states you look at all the relevant

8    evidence is the Glaxo case from 1997, but --

9          THE COURT:  Well --

10         MR. KENNEDY:  -- but really all the cases defendants

11   cite stand for our proposition.

12         THE COURT:  Well, let's talk about that Glaxo case

13   for a minute.  Because one -- one -- at least one, and perhaps

14   a primary consideration is what is likely to be sold, or

15   preferably what will be sold, will ultimately determine whether

16   infringement exists.  And if you look at the five bullet points

17   in Ms. Flax's letter that she -- on Page 3 that she titles

18   "Undisputed Facts Material to Relevancy," she lays out five

19   facts that she contends are undisputed:

20         Defendants will be manufacturing their ANDA products

21   overseas.  Will only be importing into the United States for

22   sale the formulated tablets;

23         Number two, defendants will not be importing into the

24   United States the unformulated API, and will have no

25   involvement with such, expired or otherwise;

1          Number three, defendants will only be using unexpired

2     Roflumilast API to prepare their products;

3          Number four, defendants will not be using the expired

4     API to formulate;

5          And, number five, defendants will not be marketing or

6     selling formulated products with the expired API.

7          I mean if all of those facts are so, and the test is

8     what is likely to be sold or what will be sold, I'm still

9     struggling to understand the need for this substance, this

10    expired product.

11         MR. KENNEDY:  Your Honor, none of those five bullet

12    points preclude plaintiffs from making the following findings -

13    - or following showing:

14         That -- let's say we test the expired API using an

15    expert.  And the expert testifies the 4-Hydroxy Impurity is

16    there.

17         And the expert further shows and testifies at trial

18    that if the 4-Hydroxy in the expired sample also would have

19    been in the same sample when it was unexpired, therefore, the

20    sample provided by the defendants is representative of what

21    defendant would sell upon approval and, therefore, defendants'

22    product, if sold, would infringe.

23         There is expert testimony that would to connect up a

24    couple of those points, but, you know, that's something that's

25    done in numerous ANDA cases.  And, you know, defendants' view

1  of the world is very (indiscernible 11:10:45) and not

2  consistent with the case law, and not representative of how

3  these infringement cases are made.

4          And, again, I also get back to the point that there

5  is expert testimony that will flush out some of these points

6  and connect-up the expired API to the product that would be

7  sold upon approval.

8          THE COURT:  Help me with that last statement.  Can

9  you give some proffer of how you're going to connect-up how the

10  expired product gets linked up to the product that's ultimately

11  sold?  They're --

12          MR. KENNEDY:  Sure, Your Honor.

13          THE COURT:  The defendants --just put a finer point

14  on it, the defendants have made a series of representations

15  that no such connection will occur, or can occur, or --

16          MR. KENNEDY:  Sure, Your Honor.  So let's say we test

17  the expired API and we find the 4-Hydroxy Impurity, we would

18  expect to have expert testimony to show that because the 4-

19  Hydroxy Impurity is not a degradation product, the 4-Hydroxy

20  Impurity in the expired sample would also have been present in

21  the unexpired sample.   In other words, when the sample had

22  been unexpired.

23          And remember, these defendants say they don't have

24  any unexpired samples to test.  And, therefore, because the

25  presently expired sample is not a degradation product, so it

1  would have been present in unexpired samples and, therefore, it

2  is evidence of infringement for the fact finder to weigh.

3          THE COURT:  Okay.

4          MR. KENNEDY:  And we would expect to be able to make

5  that showing at trial.

6          THE COURT:  Okay; thank you.

7          MR. KENNEDY:  But since they don't have unexpired

8  API, we would need the expired API to have an opportunity to

9  make that showing.

10          THE COURT:  All right.  I interrupted you.  Is there

11  anything else you wanted to say, Mr. Kennedy?

12          MR. KENNEDY:  Just very quickly.  You know, I think

13  the prematurity of this motion is shown by how defendants argue

14  it.  They use terms such as "producing the expired API would

15  cause a prejudice, and it would confuse the case."  Those are

16  arguments that are typically made, as Your Honor knows, in the

17  context of like a Federal Rules of Evidence 403 motion.  And,

18  in fact, Your Honor, their cases they cite in their opposition,

19  the SmithKline case was actually in that posture.  And, you

20  know, one of the reasons that motion in limine was granted as

21  to unexpired -- or as to expired samples is because it appeared

22  there were unexpired samples available in that case.  And that

23  was also after they were done expert discovery to flush out the

24  issue.

25          Defendants are trying to make the same type of 403

1  argument, something like six months before opening expert

2  reports, and in the context of discovery that they have never

3  contended would represent an undue burden to provide.  And

4  under Rule 26, I think the balance fits very strongly in favor

5  of ordering defendants to produce these samples.  I'd like to

6  make these kinds of arguments after we've had expert discovery,

7  and after the issue's been flushed out.

8          So unless Your Honor has any other questions, you

9  know, that's our position.

10         THE COURT:  All right.  Thank you.  Ms. Flax, you or

11  someone on the -- on behalf of the defendants who are resisting

12  production of this material want to -- want to add anything to

13  the July 1st submission?

14         MR. ALUL:  Good morning, Your Honor.  This is Andy

15  Alul for defendants Apotex and Micro Labs.

16         At the outset, I would like to note that plaintiffs

17  have failed in their meet and confer obligations for the simple

18  fact that none of these alleged grounds for relevancy were

19  brought during the meet and confer process.

20         What Mr. Kennedy has just proposed to the Court

21  regarding relevancy is news to us, at least to me.  It was

22  something I never heard during the meet and confer process.  It

23  was something that was never set forth in their letter to the

24  Court -- their letter motion to the Court.  You would have

25  thought -- or one would have thought that to the extent that

1  they really believed in this relevancy argument, they would

2  have supported this argument with maybe a declaration from

3  their expert.  But they never did.

4          So I'm at a little bit of a disadvantage here because

5  this is the first time I've heard this alleged relevancy

6  argument where they kept expired API and have an expert come in

7  and say, "Well, we found the 4-Hydroxy Impurity in the expired

8  API and we think, therefore, it should be present in the

9  unexpired version of that API, and that that would have been

10 used to formulate the ANDA product."  This is something we

11 haven't heard before yet.

12         So I'm at a little bit of a disadvantage here, but

13 I'll try my best to explain our position as to why we believe

14 the expired API is relevant.  As Your Honor noted, we had at

15 the top of Ms. Flax's letter at Page 3, five undisputed facts

16 that we think support denial of plaintiffs' application.  And

17 the first one is, Your Honor, that -- the first two are

18 basically that we are foreign manufacturers.  We are only going

19 to be importing to the United States finished dosage form,

20 i.e., our formulated tablets.

21         Our pre-formulated API is never going to step foot in

22 the United States.  So it cannot be the subject of an

23 infringement charge from plaintiffs in this case.

24         What they're trying to do is weave a circumstantial

25 evidence case.  They're saying, well, you know, we found the 4-

1   Hydroxy Impurity in your pre-formulated API and, therefore,

2   you're going to formulate your ANDA product and so it should

3   have it in there when it comes into the United States.

4           That's all stuff that's just very remote and

5   speculative, and I'm not sure that it could be the basis for

6   their relevancy argument.

7           But even more importantly, Your Honor, as the Court

8   noted, you know, to the extent that any of the defendants have

9   had -- have unexpired API samples, they've produced them.  A

10  few of the defendants, including my clients -- one of my

11  clients does not have any unexpired APIs left because they

12  (indiscernible 11:17:09) their APIs to a non-party to this case

13  that plaintiffs haven't sued.

14          So we've produced finished dosage form tablets,

15  that's what plaintiffs need to focus on for infringement in

16  this case.

17          And their -- their argument for relevancy is just

18  speculative, and based on unsupported attorney arguments, and I

19  just don't really know what to make of it other than that.

20          So we maintain our position that the expired samples

21  are irrelevant, Your Honor.  And I think as the Court noted,

22  the five undisputed facts that we brought to the Court's

23  attention really support denial of plaintiffs' application, and

24  I'd be happy to answer any further questions the Court has.

25          THE COURT:  All right.  Thank you.  Let me start with

1  your first point:  Would a further meet and confer, now that

2  you've heard a more expansive argument from the plaintiffs

3  regarding relevance, do you think a further meet and confer is

4  going to have any beneficial effect on the defendants' position

5  regarding production?

6          MR. ALUL:  Your Honor, I'm always open to something

7  like that.  But I think -- as I think through this, I just -- I

8  continue to believe that their argument for relevancy is

9  speculative.

10          THE COURT:  I --

11          MR. ALUL:  And regarding --

12          THE COURT:  My question --

13          MR. ALUL:  (Indiscernible - multiple speakers

14  11:18:44) if I may --

15          THE COURT:  One second.  My question was somewhat --

16  was somewhat disingenuous in that my sense is that given the

17  overall position the defendants have taken on relevance, that

18  further time spent in a meet and confer context is not likely

19  to be -- is not likely to be productive, right?  If I'm --

20          MR. ALUL:  I would agree.

21          THE COURT:  Okay.  So let me propose this idea, and

22  see what you all think of it.  I guess my thinking could best

23  be described as skeptical with respect to the relevance of this

24  request, but I'll suggest maybe a better term is "uneducated,"

25  at least for the time being.

1          I understand the arguments being proffered, but I'm

2    having a hard time, to be candid, Mr. Kennedy, in connecting

3    the dots that you and the plaintiffs would have me connect on a

4    relevance argument between this unexpired -- I'm sorry --

5    expired product and ultimately your arguments on infringement.

6          And I think perhaps the Court would benefit from a

7    declaration or submission from one of plaintiffs' experts

8    filling out the argument on what it is you say could have

9    bearing on the issues in this case, and what the experts

10   propose to do in that regard.

11         And then once that declaration has been produced,

12   maybe that's the time for you and defense counsel to circle

13   back in a brief meet and confer to see whether there's anything

14   disclosed via that declaration that gives the defendants a

15   basis to reconsider, and an opportunity to respond to it, if

16   they choose.  And then I think I would be more comfortable

17   making a decision on this -- on this subject.

18         So I put that out there, not as the final word, but

19   as a -- as a suggestion for your consideration.  Mr. Kennedy?

20         MR. KENNEDY:  Your Honor, I'm thinking it through in

21   my mind that maybe a productive way to proceed -- I guess my --

22   candidly my initial reaction is that I fear that it could set

23   up kind of a satellite litigation over an issue that would be

24   dealt with in the ordinary course through expert discovery.

25   But I -- you know, it's certainly something, you know, I'm

1  happy to consider and -- and, you know, we could probably do

2  it.

3       You know, the only other thing I'd say is that I

4  think the defendants -- their July 1st letter had, you know,

5  assertions that probably could benefit from, you know, an

6  expert declaration, as well.  You know, and Mr. Alul's point,

7  you know, I think -- you know, in responding to a letter orally

8  that we didn't have in writing, I think that's, you know, where

9  a lot of these expert issues get flushed out.

10      But would Your Honor contemplate some kind of

11 exchange of declarations or plaintiffs go first, and defendants

12 respond?  I just want to understand the idea.

13      THE COURT:  Well, I'm -- I'm to suggestions in terms

14 of staging and, you know, the -- whatever this process is.  I

15 mean I -- ultimately I'm confessing to the -- to the group here

16 that I'm having trouble getting my head around the relevance

17 argument, and I'm trying to give plaintiffs an opportunity to

18 give me some help here.  And, of course, I want to give

19 defendants an opportunity to respond to whatever help you

20 offer.

21      So whether we do it simultaneously, whether you all

22 exchange them among yourselves and submit them simultaneously,

23 I'm open to whatever process works for everybody.  But on the

24 basis of what I have in front of me right now, I'm -- I'm

25 struggling.

1              MR. ALUL:  Your Honor, this --

2              MR. KENNEDY:  Your Honor, let me --

3              MR. ALUL:  This is -- I'm sorry.  This is Andy Alul

4   on behalf of Apotex.

5              We're certainly agreeable to the procedure the Court

6   proposed, and we think it's probably a good idea.  Because,

7   again, plaintiffs' assertions regarding relevancy are just

8   completely unsupported.

9              I'm a little confused by Mr. Kennedy's remarks that

10  he believes some of the assertions in our July 1st letter need

11  expert support; I'm not sure what he's really talking about.

12  Our main arguments are set forth in Section 2, and particularly

13  the five uncontested, what we believe to be, material facts to

14  the application.

15             To the extent Mr. Kennedy is talking about the

16  argument we made regarding prejudice, the argument is simple.

17  And that's that, you know, our API samples are expired, and

18  they're expired for a reason.  They're expired because past a

19  certain date, like most chemical substance, they degrade, and

20  they have an expiration date from the manufacturer which is

21  basically the manufacturer's way of saying after this date, we

22  can't guarantee the purity of this API.  Well, purity and the

23  presence of a certain impurity are the subject of plaintiffs'

24  infringement allegations with respect to the impurity patents

25  in this case.

1          So it's pretty simple.  We backed up that argument

2     with documents from plaintiffs' own production.  Mr. Kennedy

3     even admits that at least under one condition in the document

4     we attach to our letter that the 4-Hydroxy Impurity is a

5     degradation product.

6          So we backed up whatever factual assertions for our

7     secondary arguments via documentary evidence from plaintiffs'

8     production.

9          To the extent that we give them an additional

10    declaration from our experts to support -- support anything,

11    we'll certainly consider it.  But I dispute Mr. Kennedy's

12    argument that somehow we had a number of allegations in our

13    letter that need expert support.  Actually our principal

14    argument is undisputed, and that is we're not going to be using

15    unexpired API to formulate our ANDA product and API is

16    irrelevant as far as infringement is concerned in this case

17    because none of us are going to be importing or using our API

18    in the United States, only our finished dosage form.

19          THE COURT:  So where does that leave us, Counsel, in

20    terms of additional submissions and what you all propose to

21    give me for the help that I'm seeking?

22          MR. KENNEDY:  Your Honor, this is Mike Kennedy for

23    plaintiffs again.

24          Let me suggest this:  Counsel are all going to see

25    each other over the next week at a claim construction

1  deposition and then the Markman hearing.

2          THE COURT:  Right.

3          MR. KENNEDY:  I don't want to prolong this unduly,

4  but I do need to consult with defendants and with my own side

5  about what kind of schedule makes sense for an expert

6  declaration.  So would it be okay with Your Honor if in the

7  next few days to a week, the parties submit a proposed schedule

8  for a declaration?  And in the meantime, Your Honor could hold

9  the ruling on the motion in abeyance?

10         THE COURT:  I'm fine with that, I think it makes some

11  sense.  I know you have other pressing aspects of this case,

12  preparing for the Markman hearing.  And that's on for the 12th,

13  correct, with Judge Wolfson?

14         MR. KENNEDY:  Correct.

15         THE COURT:  All right.  So if you can get yourselves

16  through that exercise, and get something to me either by the

17  end of next week or the beginning of the following week, you

18  know, that represents some kind of a schedule for your

19  submissions, you all can work out the staging of your

20  submissions, I'm certainly fine with that.

21         Mr. Dansford (sic)?

22              (No audible response heard)

23         THE COURT:  Did we lose you?

24         MR. KENNEDY:  I'm sorry, Your Honor, it's Mr.

25  Kennedy.  I'm not sure who you were addressing.

1          THE COURT:  Defense counsel.

2          MR. KENNEDY:  The plaintiffs -- the plaintiffs --

3   plaintiffs are fine -- yeah, plaintiffs are fine with your

4   schedule.

5          THE COURT:  Okay.

6          MR. ALUL:  And, Your Honor --

7          MR. KENNEDY:  What you're suggesting.

8          MR. ALUL:  And, Your Honor, Andy Alul for the Apotex

9   defendants.

10          We're completely fine with the Court's proposal, as

11   well.

12          THE COURT:  Okay.  So informally -- I'm not holding

13   you to this date specifically, but get through the Markman on

14   the 12th, and by the middle of the next week, roughly the 20th,

15   give or take a day, I'll expect to see something from you all

16   that represents a proposal for additional submissions on the

17   subject of plaintiffs' informal application, okay?

18          MR. ALUL:  Yes, Your Honor; thank you.

19          THE COURT:  All right.

20          MR. KENNEDY:  That works for plaintiff, Your Honor;

21   thank you.

22          THE COURT:  Okay.  So let me just address one last

23   issue before we go.  I know we said earlier that everybody was

24   generally content with the schedule we have laid out in the

25   scheduling order from last November, Docket Number 37.  That

1  does not call for another telephone conference until October,

2  October 3rd at 10 a.m.  Is everybody okay with that timing?

3  Understanding that I may schedule an ad hoc call or conference

4  in the meantime once I get your additional submissions on the

5  issue we've been discussing.

6         But on the general subject of case management, is

7  that October 3rd date still an appropriate time as far as you

8  all are concerned?

9         MR. KENNEDY:  This is Mike Kennedy for plaintiffs.

10        We're -- we're fine with October 3rd.  We would also

11  be fine with an earlier date; whatever Your Honor prefers.

12        THE COURT:  Anybody on the defense side feel

13  differently?

14              (No audible response heard)

15        THE COURT:  All right.  I'm going to leave the

16  October 3rd date in place.  I'm not going to schedule anything

17  in the interim.  I may, as I said, ask for another conference,

18  I'll post it on the docket if such a conference is necessary

19  for me to address the issue that we've been discussing today.

20        And, of course, if anything else comes up, and you

21  need me in the interim, you folks know where to find me.  So --

22  all right.  That's all I have for today.

23        Anything else on behalf of the plaintiffs, Mr.

24  Kennedy?

25        MR. KENNEDY:  Nothing from plaintiffs, Your Honor;

1  thank you.

2          THE COURT:  Okay.  And anything else from any of the

3  defendants?

4                  (No audible response heard)

5          THE COURT:  All right, folks, nice to talk to you.

6  Enjoy the summer.  If you're in the neighborhood next week

7  after your Markman hearing, and you want to stop down and say

8  hello, I'd be happy to see you.

9          MULTIPLE SPEAKERS:  Thank you, Your Honor.

10          THE COURT:  All right.  Thank you.  Bye-bye.

11          (Whereupon, at 11:30, the hearing was adjourned.)

12

13

14              CERTIFICATE OF TRANSCRIBER

15

16      I, KAREN HARTMANN, a certified Electronic Court

17  Transcriber, certify that the foregoing is a correct transcript

18  from the electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21  *Karen Hartmann*

22

23  Karen Hartmann, AAERT CET**D0475 Date: July 11, 2016

24  TRANSCRIPTS PLUS, INC.

25